**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RUBEN JIMENEZ ESCANDON,

   Plaintiff,

v.            No. CV 11-494 JB/CG

GEO GROUP, INC., ET AL.,

   Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

  **THIS MATTER** comes before the Court on *Defendant Correctional Medical Services Inc.'s Motion for Summary Judgment for Failure to Exhaust Administrative Remedies*, (Doc. 19), and Plaintiff's *Motion to Stay to All Procedures and Actions*, (Doc. 27). Defendant Correctional Medical Services ("CMS") argues that Plaintiff Ruben Escandon's claims against CMS should be dismissed because Plaintiff failed to exhaust all available administrative remedies in violation of the Prison Litigation Reform Act. (Doc. 19 at 7-9). Plaintiff did not file a response to the motion and the time for doing so has passed. However, he has filed a motion seeking to stay the proceedings so that he may obtain additional documentation from Defendant CMS. (Doc. 27). The Court, having considered the motions, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that CMS' motion be **GRANTED IN PART AND DENIED IN PART** and that Plaintiff's motion to stay be **DENIED.**

  I.  **Background**

    a.  **Plaintiff's Claims**

Plaintiff Ruben Jimenez Escandon is an elderly inmate who is incarcerated at the

Lea County Correctional Facility ("LCCF") in Hobbs, New Mexico. (*See, generally*, Doc. 5; 19 at 1). Plaintiff's complaint contains both general and specific allegations of misconduct by CMS, the LCCF medical provider. Generally, he claims that he suffers from several medical maladies, including cirrhosis of the liver, a previously broken hip and tail bone, arthritis, and an abdominal hernia. (Doc. 5 at 5 ¶ 2). He alleges that an unnamed doctor at LCCF "refuses to see those things." (*Id*.). He asserts that LCCF doctors refuse to provide timely medical treatment, claiming that medical requests are ignored and that he will only be seen if there is an emergency. (*Id*. at 17).

Plaintiff's complaint recounts three specific instances of medical misconduct. First, he claims that an unnamed doctor failed to renew his prescription for "pain pills as well as arthritis medication cream[,]" for over three months, resulting in unnecessary suffering. (*Id*. at 8). Second, he alleges that his liver stopped functioning at some point and that his stomach swelled, which prevented him from being able to urinate. (*Id*. at 17). Plaintiff was eventually taken to the medical. (*Id*.). A month later, in an effort to treat Plaintiff's abdominal swelling, the doctor prescribed anti-constipation pills even though Plaintiff had told the doctor that he was unable to urinate. (*Id*.). Plaintiff had to get "water pills" from another inmate and those pills alleviated his urination symptoms. (*Id*.). Despite the positive effect of the "water pills[,]" the unnamed doctor failed to provide a prescription for these pills for another several months (*Id*.).[1] Third, Plaintiff claims that a "Doctor Jose" failed to treat persistent dizziness, which he believes is a result of a head injury suffered after being attacked by several LCCF guards. (Doc. 5 at 16-17; Doc. 10 at 2 ¶ 7).

---

[1] Plaintiff alleges that he received a prescription for "water pills" either two or six months after initially receiving some of the pills from another inmate. (*Compare* Doc. 5 at 7 ¶ 6 *with* Doc. 5 at 17).

**b.** <u>**Plaintiff's Grievances**</u>

The New Mexico Corrections Department maintains a uniform grievance policy that was in effect at LCCF during the time relevant to Plaintiff's complaint. (Doc. 19 at 7-8; Doc. 19, Ex. A at 2 ¶ 6-7). The grievance policy consists of four steps: A prisoner first has to file an "Inmate Informal Complaint" with his unit manager within five days of the incident giving rise to the grievance. (Doc. 19, Ex. B at 1 ¶ 1). If the informal complaint fails to resolve the issue within five days, the inmate has the right to file an "Inmate Grievance Form" with a Grievance Officer. (*Id*.). The grievance has to be filed within 20 days of the incident giving rise to the complaint. (*Id*.). The grievance may not address multiple issues - multiple complaints require multiple grievances. (*Id*. at 2 ¶ 7).

Once a formal grievance has been received, the Grievance Officer is required to prepare a recommended disposition for the Warden within 20 days. (*Id*. at 4 ¶ 4). The Warden then has 15 days within which to approve, disapprove, or modify the recommendation. (*Id*. at 4 ¶ 2-4). If the inmate is not satisfied with the Warden's decision, he has a right to appeal to the Office of the Secretary of Corrections within seven days. (*Id*. at 5 ¶ 1). A Grievance Administrator in the Secretary's office will then investigate the matter and prepare a recommendation for the Secretary or his designated representative. (*Id*. at 5 ¶ 5).

Defendant claims that Plaintiff failed to complete the grievance process for any of the claims raised in his complaint. (Doc. 19 at 2, 8-9). In support, they have attached the affidavit of Liza Elizondo, the custodian of all inmate grievances at LCCF, as well as copies

of all relevant grievances filed by Plaintiff. (Doc. 19, Ex. A at 1-4).[2] The records indicate that Plaintiff submitted multiple grievances relating to his medical treatment at LCCF, some of which were denied and some of which were acted upon and resolved. Plaintiff filed a formal grievance in May of 2010 alleging that nurses were not dispensing his pain medication at the pill line, that he was not promptly provided with his "water pills", and that his repeated requests for medical treatment were being ignored. (Doc. 19, Ex. C at 1). The grievance was denied because Plaintiff had failed to first file an informal complaint. (*Id.*). Plaintiff then prepared an informal complaint that addressed a large range of issues, including an allegation that doctors will not see him until he needs emergency treatment. (Doc. 19, Ex. D at 1-2). The grievance was denied because it addressed multiple issues.  (*Id.* at 1).

In October of 2010 Plaintiff filed an informal complaint alleging that his pain medication had been ordered but not provided to him and that he was suffering. (Doc. 19, Ex. E at 1). The complaint was resolved, with a staff member writing that the pain medication had been ordered and that Plaintiff should go to the pill line to receive it. (*Id.*). Plaintiff did not appeal this resolution or file any other grievances relating to the pain medications. (Doc. 19, Ex. A at 3 ¶ 13). In December of 2010 he filed an informal complaint alleging that he was not receiving his "arthritis cream." (Doc. 19, Ex. F at 1). The complaint was resolved after a staff member confirmed that the cream had been ordered. (*Id.*). Plaintiff did not appeal this resolution. (Doc. 19, Ex. A at 3, ¶ 14).

In July of 2011, several months after Plaintiff began this lawsuit, Plaintiff filed a

---

[2] Some of the attached grievances, including several detailing Plaintiff's attempt to obtain a medical cane, relate to issues that were not raised in the complaint. (Doc. 19, Ex. G at 1-5). The Court will only address only those grievances which relate to the claims alleged in the Complaint.

grievance complaining that he was not receiving proper treatment for dizziness. (Doc. 19 Ex. H at 1).  Plaintiff believed that the dizziness was related to a head injury he suffered after being beaten by several LCCF guards. (*Id.*). The grievance was denied because Plaintiff had failed to file an informal grievance. (*Id.*). Plaintiff then filed an informal complaint alleging the same misconduct and the complaint was recommended for a formal grievance. (Doc. 19, Ex. I at 1). The grievance was accepted and, in response, the LCCF grievance officer wrote that Plaintiff received medical treatment immediately after the incident with the guards. (*Id.* at 4, 6). The grievance officer further noted that Plaintiff was still receiving "pain medication therapy" and he advised Plaintiff to submit a health service request for "any new signs or symptoms you may have . . ." (*Id.*). The officer labeled the grievance as "resolved" and Plaintiff did not appeal or further pursue the grievance process. (*Id.* at 6).

## II.   <u>Standard of Review</u>

Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c)(2). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Affidavits or other evidence offered by the nonmoving party must create a genuine

issue for trial; viewing the evidence in the light most favorable to the nonmoving party. Although all facts are construed in favor of the nonmoving party, it is still Plaintiff's responsibility to "'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to [his] case' in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *Celotex,* 477 U.S. at 322)).

The Court liberally construes Plaintiff's filings because he is a *pro se* plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, a *pro se* non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hospital,* 221 F.3d 1160, 1164 (10th Cir. 2000). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion.

### III.   Analysis

#### a.    Motion for Summary Judgment

Defendant CMS' motion for summary judgment asserts that Plaintiff's complaint must be dismissed due to his failure to exhaust all administrative remedies in violation of the Prison Litigation Reform Act. (Doc. 19 at 7-9). The PLRA mandates that "no action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to first provide prison officials with an opportunity to respond to an inmate's complaint and to ensure that an administrative record is created that facilitates judicial review. *Whitington v. Ortiz*, 472 F.3d 804, 807 (10th Cir. 2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002)). The PLRA's exhaustion requirement is mandatory in every

6

instance as Congress has eliminated a court's discretion to look beyond a prisoner's failure to exhaust his or her administrative remedies. *Porter v. Nussle*, 534 U.S. 516 (2002). In order to exhaust all available administrative remedies a prisoner must do more than simply initiate the grievance process; he must complete it prior to filing suit. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Plaintiff did not file any response to Defendant's motion. Pursuant to the Local Rules of Civil Procedure for the District of New Mexico, "failure of a party to file and serve a response in opposition to a motion . . . constitutes consent to grant the motion." D.N.M.L.R.-Civ. 7.1(b). However, Plaintiff's failure to respond does not "relieve the court of its duty to make the specific determinations required by Fed. R. Civ. P. 56(c)." *Murray v. City of Talequah, Okl.*, 312 F.3d 1196, 1200 (10th Cir. 2002). By failing to respond to the motion, Plaintiff "waives the right to respond or to controvert the facts asserted in the summary judgment motion." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). The Court will therefore "accept as true all material facts asserted and properly supported in the summary judgment motion." *Id.*

Defendant's uncontroverted evidence demonstrates that Plaintiff failed to administratively exhaust his claims that LCCF doctors failed to provide timely care, refused to treat his cirrhosis and broken bones, and failed to properly treat his liver failure. None of the grievances submitted by Plaintiff assert that he is not receiving care for any of those conditions. Therefore, Plaintiff did not exhaust available administrative remedies with regard to those claims. Two of the grievances do mention untimely care as well as his liver failure and need for "water pills." (Doc. 19, Ex. C at 1; Ex. D at 2). However, both those grievances were rejected because Plaintiff had either failed to first file an informal grievance

or because the grievance addressed multiple issues. (Doc. 19, Ex. A at 2 ¶ 11-12). Plaintiff did not cure the deficiencies noted in these grievances and therefore failed to complete the grievance process. These claims must be dismissed. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Plaintiff's last three claims - that LCCF doctors failed to order his pain medication, provide him with his arthritis cream, and treat his head injury - present a closer question. Plaintiff followed the correct procedure by first filing an informal complaint for all three of those complaints. (Doc. 19, Ex. E at 1; Ex. F at 1, Ex. I at 1). All three complaints were reviewed by LCCF officials and all were purportedly resolved in Plaintiff's favor. The question for this Court is whether Plaintiff had any duty to further exhaust administrative remedies after having his complaints resolved by LCCF officials.

The Tenth Circuit has recognized that "[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004), *overruled on other grounds*, *Jones v. Bock*, 549 U.S. 199, 222-23 (2007). Similarly, many federal Circuit Courts of Appeals have held that there is no duty to exhaust administrative grievances after prison officials have resolved a grievance in a prisoner's favor. *See, e.g.*, *Rosa v. Littles*, 336 F.App'x 424, 428-29 (5th Cir. 2009); *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005); *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004); *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002). The reasoning is that the PLRA only mandates that prisoners exhaust administrative grievances which are "available." *Booth v. Churner*, 532 U.S. 731, 734 (2001) ("Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the

8

inmate with nothing to exhaust."). The Court must therefore determine whether the resolution of the three grievances rendered all further relief unavailable.

The Court finds that Plaintiff's grievance regarding the treatment of his head injury did not suffice to exhaust all available administrative remedies. In his informal complaint, Plaintiff alleged that doctors refused to treat the dizzy spells which he believed were the result of a head injury suffered during an assault by LCCF guards. (Doc. 19, Ex. I at 1). The informal complaint did not resolve the issue and Plaintiff then filed a formal grievance requesting that he be seen by a specialist in head and brain injuries. (*Id.* at 2). The LCCF grievance officer responded that Plaintiff had been seen by a doctor immediately after sustaining the head injury and the grievance officer labeled the complaint as resolved. (*Id.* at 6). The Warden of LCCF approved the grievance officer's decision. (*Id.*). Plaintiff did not appeal that resolution or pursue the grievance process any further.

While the grievance officer labeled the grievance as resolved, it is clear that Plaintiff did not receive the resolution he was seeking. The officer's explanation that "you were seen by medical after you were brought to medical following a Use of Force incident" was not responsive to Plaintiff's complaint that doctors refused to treat the dizzy spells which continued for some time after the initial assault. Neither did the grievance officer address his request to be seen by a head specialist in order to receive a proper diagnosis and treatment. (Doc. 19, Ex. I at 2 ("I need to get my head examined by a specialist for head or brain damage"); Doc. 10 at 2 ¶ 7 ("I get dizzy spells and am trying to get the doctor to send me to a specialist to examine my head injury.")). The grievance procedure in effect at LCCF provides that, if an inmate is not satisfied with the decision of the grievance officer and Warden, he could appeal that decision to the Secretary of Corrections. (Doc. 19, Ex.

B at 5 ¶ 1). Plaintiff did not appeal the grievance officer's decision and therefore he did not exhaust all available administrative remedies. This claim must be dismissed.

With regard to Plaintiff's claims that LCCF officials failed to provide him with his pain medication and arthritis cream, the Court finds that Plaintiff has exhausted all available administrative remedies. In both instances, Plaintiff claimed that needed medication was not provided to him in a timely manner. (Doc. 5 at 8 ¶ 6; Doc. 19, Ex. E at 1; Ex. F at 1). Both those complaints were resolved when prison officials verified that the relevant medications had been ordered and Plaintiff was told how to get them. Therefore, based solely on the evidence presented in the complaint and Defendant's motion for summary judgment, the Court cannot say that any further relief was available to Plaintiff following that resolution. The Court recommends that Defendant's motion be denied with respect to Plaintiff's allegations regarding his pain medication and arthritis cream.

### b.   Motion to Stay

Although Plaintiff did not file a response to CMS' motion for summary judgment, he now seeks to have the case stayed while he obtains copies of grievances from CMS as well as documentation regarding an "incident" that occurred on December 21, 2010. (Doc. 27 at 1-2, 4-5).   He submits that a stay is appropriate until "Defendants produce the documents needed." (*Id.* at 1). The Court recommends that this motion be denied.

Plaintiff's request for copies of grievances does not provide good cause to stay this case. Inasmuch as Plaintiff seeks to produce grievances to contradict the facts set forth in CMS' motion for summary judgment, Plaintiff has already forfeited that opportunity. *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). ("By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to

controvert the facts asserted in the summary judgment motion."). Although Plaintiff is afforded some lenience in formulating legal arguments because he is proceeding *pro se*, the Tenth Circuit has always "insisted that *pro se* parties follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks omitted). Plaintiff is not entitled to ignore CMS' motion and then, months later, request that the Court stay his case so that he might develop facts in response.

Neither does Plaintiff's request for documentation regarding the December 21 incident provide good cause to stay the case. Plaintiff does not actually explain what incident occurred on December 21 but it seems likely that he is referring to the altercation with prison guards which resulted in his head injury and subsequent dizzy spells. (Doc. 27 at 5 (referring to "the incident that happened at the medical clinic" and referencing pictures that were taken of his cut eye)). The documents regarding the incident are not relevant to this case since he has not asserted excessive force claims against any of the prison guards involved in the altercation.[3] Nor has he asserted that CMS doctors failed to treat his injuries on the date of the altercation, only that a doctor failed to properly diagnose and treat the dizzy spells which manifested in the days and weeks after the incident occurred. The Court therefore recommends that the motion to stay be denied.

## IV.   Conclusion

The Court, having found that Plaintiff failed to exhaust all available administrative remedies except with respect to claims to regarding the disbursement of pain medication and arthritis cream, hereby **RECOMMENDS** that *Defendant Correctional Medical Services*

---

[3] As noted by Defendants in an earlier motion for summary judgment, Plaintiff did institute a New Mexico state court action against several LCCF guards for the December 21 altercation. (Doc. 11 at 8; Doc. 11, Ex. I at 1-3). The state case was dismissed for failure to exhaust administrative remedies. (Doc. 11, Ex. J at 1-2).

*Inc.'s Motion for Summary Judgment for Failure to Exhaust Administrative Remedies*, (Doc. 19), be **GRANTED IN PART AND DENIED IN PART**. The Court **FURTHER RECOMMENDS** that Plaintiff's *Motion to Stay to all Procedures or Actions* be **DENIED.**

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE